IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No. | CR-18-260-SLP |
| | ) | | CIV-22-689-SLP |
| CHELSEA ROUSE, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**O R D E R**

Before the Court is Defendant Chelsea Rouse's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 2858]. The Government has responded [Doc. No. 2864] and the matter is at issue. Upon review and for the reasons that follow, the Motion is DENIED.

**I.  Factual and Procedural History**

On April 18, 2019, Defendant entered a guilty plea to a three-count superseding information charging her with the following: Count 1 -- money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Count 2 -- possession of a firearm by a drug user in violation of 18 U.S.C. § 922(g)(3); and Count 3 -- possession of methamphetamine with intent to distribute in violation of 18 U.S.C. § 841(a)(1). Defendant was represented by attorney Scott M. Anderson, retained counsel.

The charges against Defendant arose from an investigation that was initiated in 2016 into the Irish Mob Gang (IMG). That investigation ultimately led to over sixty defendants being charged by indictment with various drug-related offenses to include drug

conspiracy.[1]

During the time of the investigation, Defendant served as a drug courier for incarcerated IMG members, storing drugs and drug proceeds in her house. She also enlisted others to assist her including Billy Rush and Carlos Neal. Doc. 1898, ¶¶ 21, 24. Between November of 2017 and April of 2018, Mr. Rush and/or Mr. Neal made approximately 12 trips to Wichita, Kansas to obtain methamphetamine from people working for Rogelio Velasquez and deliver it to Defendant in Yukon, Oklahoma. *Id*., ¶ 24. Defendant would put the methamphetamine in a storage unit. *Id*., ¶ 25. In August 2018, Defendant was arrested during a traffic stop. She had two packages in her vehicle which contained 9,737 grams of 99% pure methamphetamine. *Id*.

In October 2018, the grand jury returned a 52-count indictment charging Ms. Rouse (along with 38 other defendants) with various drug and money laundering counts. Doc. 327. On December 19, 2018, the grand jury returned a superseding indictment. The superseding indictment added additional substantive money laundering counts against Defendant and charged an additional 21 defendants. Doc. 590.

On December 6, 2018, Defendant signed a plea agreement in which she agreed to plead guilty to a superseding information. Doc. 1062. As part of her plea agreement, Defendant agreed and stipulated that her relevant conduct "include[d] *at least* 15 kilograms of a mixture or substance containing a detectable amount of methamphetamine." Doc.

---

[1] Defendant was charged with Drug Conspiracy but did not plead to that charge. *See* Doc. 327 (Indictment) and Doc. 590 (Superseding Indictment).

1062 at 7 (emphasis added). She also "waive[d] her right to appeal her sentence as imposed by the Court, including any restitution, and the manner in which the sentence is determined." *Id*. at 9. But excepted from her appellate waiver was Defendant's right to appeal the substantiveness reasonableness of her sentence if the sentence were above the advisory guideline range determined by the Court to apply to her case. *Id*.[2]

On June 26, 2020, the United States Probation Office (USPO) filed its revised presentence investigation report (PSR). *See* Doc. 1898. Based on information gathered during the investigation, the PSR recommended holding Defendant accountable for a total of 306,454 kilograms of converted drug weight – based on 80 pounds of methamphetamine.[3] Considering all of Defendant's conduct, the PSR recommended a total offense level of 43. *Id*., ¶ 69. Based on an offense level of 43, a criminal history category of I, and the relevant statutory maximums, the PSR identified the guidelines sentence as 840 months' imprisonment. *Id*., ¶ 116. Defendant's counsel submitted several objections to the PSR. *Id*., Addendum at 34-37. Also, on March 29, 2021, Defendant's counsel filed a sentencing memorandum with supporting exhibits. *See* Doc. 2455.

On August 17, 2021, the Court conducted a sentencing hearing. Doc. No. 2602. At

---

[2] Also excepted from the appellate waiver was Defendant's right to raise claims of ineffective assistance of counsel, the claims she now raises in her § 2255 Motion. *See* Doc. 1062 at 9, ¶ 10(c).

[3] These amounts were based on 80 pounds of methamphetamine from trips to Wichita taken by co-defendants Billy Rush and Carlos Neal (who assisted Defendant); a July 12, 2018 delivery of 10 kilograms of methamphetamine; 956.9 grams of Ice seized when co-defendant Rush was arrested on August 12, 2018; and 9,737 grams of Ice seized when Defendant was arrested on August 22, 2018. *See* PSR, ¶ 37.

the hearing, Defendant withdrew her objections to the PSR.[4]  The Court adopted the PSR without change, finding that Defendant's guidelines sentence was 840 months' imprisonment.  Doc. 2608 at 1.  The Court both departed and varied downward.  *Id*. at 2-3.  The Court sentenced Defendant to 120 months' imprisonment on each count, with the counts to run concurrently.  Doc. 2607 at 2.  Defendant did not appeal.

II.     **Defendant's Motion**

In her § 2255 Motion, Defendant brings a claim of ineffective assistance of trial counsel alleging the following: (1) counsel failed to explain the meaning of "924(a)(2)"; (2) counsel told Defendant she could file a motion if anyone else charged in the Indictment got a better outcome; (3) counsel withdrew objections to the PSR instead of continuing to challenge the drug quantity found in the PSR; and (4) counsel told Defendant that she "could not appeal anything."

In response, the Government argues that none of these allegations rise to the level of constitutionally ineffective assistance of counsel.  Therefore, the Government contends the § 2255 Motion should be denied.

III.    **Governing Law**

Defendant's ineffective assistance of counsel claim is governed by the well-established framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish ineffective assistance of counsel, a movant must show (1) that counsel's

---

[4] The Minute Sheet of the sentencing proceedings indicates no objections to the PSR were heard.  *See* Doc. 2602.  The Minute Sheet is consistent with Defendant's allegations in her § 2255 Motion that her trial counsel withdrew all objections to the PSR at sentencing.  Doc. 2858 at 6.

4

representation was deficient because it "fell below an objective standard of reasonableness" and (2) that counsel's "deficient performance prejudiced the defense." *Id*. In addressing the deficient performance prong the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy." *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005) (citation omitted). As to prejudice, a movant must demonstrate a "reasonable probability of a more favorable outcome absent counsel's deficient performance. *Id*.

IV. <u>Analysis</u>

    A. **Failure to Explain the Meaning of 924(a)(2)**

Defendant first alleges her counsel was ineffective because he failed to explain the meaning of "924(a)(2)." Doc. 2858 at 6. Defendant states: "I plead [sic] guilty to a 922(G)(3) only but my paperwork says 922(G)(3), 924(A)(2) so I'm not sure if the 924(A)(2) means anything or not." *Id*.

A review of the record makes clear that reference to 924(a)(2) is a reference to 18 U.S.C. § 924(a)(2). *See, e.g.*, Doc. 902 (Superseding Information). At the relevant time, § 924(a)(2) provided: "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned for not more than 10 years, or both."[5]

---

[5] Section 924(a)(2) was amended, effective June 25, 2022. As amended, section 924(a)(2) no longer includes violations of subsections (d) and (g) of section 922. Instead, effective June 25, 2022, pursuant to subsection 924(a)(8), persons found to have knowingly violated subsection (d) or (g) of section 922 now face up to fifteen years imprisonment, rather than ten. Because the date

Defendant fails to show any prejudice based on her counsel's alleged failure to advise her that § 924(a)(2) is the penalty provision, providing a maximum penalty of ten years for her § 922(g)(3) offense.  As the Government points out, Defendant was advised of the maximum penalty for her violation of 18 U.S.C. § 922(g)(3) in her plea agreement, *see* Doc. 1062 at 3, and in the final PSR, *see* PSR, ¶ 115.  She was also advised of this same maximum penalty in the plea petition, *see* Doc. 1063 at 4.  Because Defendant was clearly advised of the penalty provision and the applicable maximum penalty, she has failed to demonstrate either deficient performance or prejudice and her claim necessarily fails.

> B.   **Defendant's Sentence Compared to the Sentences of Certain Co-Defendants**

Next, Defendant alleges that counsel told her that "after everyone else on my indictment was sentenced we would file a motion if they got a better outcome."  Doc. 2858 at 6.  Defendant then references the sentences of three co-defendants.  She contends one co-defendant got the same amount of time, even though that co-defendant "had double my drug weight, manager role and had been to federal prison before and her points were 47[.]"  She further contends two other co-defendants "did not get any additional time for there [sic] prison sentence" because their federal sentences were to run concurrently with their state sentences.  *Id*.  Defendant does not articulate the legal or factual basis for any such motion, other than referencing the sentences of the three co-defendants.[6]

---

of the crimes Defendant was charged with occurred prior to June 25, 2022, the statute in effect at that time governs and provides for imprisonment for not more than ten years.

[6] The Government points out that the three co-defendants identified by Defendant received the same or longer sentences as Defendant.  *See* Resp. at 7.

The exact basis for Defendant's claim is unclear.  To the extent she claims a post-conviction motion should have been filed, she has no constitutional right to counsel to assist in such matters.  *See, e.g., Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008) ("There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]").[7]

To the extent Defendant claims her trial counsel should have raised this issue on direct appeal of her conviction, the Court fails to discern any deficient performance or prejudice.[8]  Any claim related to sentencing disparity entails a challenge to the substantive reasonableness of her sentence.  But Defendant waived any challenge to the substantive reasonableness of her sentence, unless the sentence was "above the advisory guideline range determined by the Court to apply to her case."  Doc. 1062 at 9, ¶ 10(a).

Here, the advisory guideline range determined by the Court was 840 months.  Defendant was sentenced to 120 months – a significantly lower sentence.  Accordingly, Defendant could not have succeeded on such a claim even if it had been raised on direct appeal.  Defendant fails to show that but for counsel's failure to raise the issue, the result

---

[7] Defendant does not raise any claim related to this Court's consideration of sentencing disparities at her sentencing.  *See* 18 U.S.C. § 3553(a)(6) (addressing as a sentencing factor "the need to avoid *unwarranted* sentence disparities among defendants with *similar records* who have been found guilty of *similar conduct*") (emphasis added).  In this regard, as the Tenth Circuit has stated "the purpose of the Guidelines is not to eliminate disparities among co-defendants, but rather to eliminate disparities among sentences nationwide."  *United States v. Pena*, 963 F.3d 1016, 1026 (10th Cir. 2020).  And "§ 3556(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence."  *Id*. (internal quotation marks and citation omitted).

[8] As discussed supra, Defendant also brings a claim that her trial counsel was  ineffective based on counsel's alleged representation that she could not appeal anything.

of the proceeding would have been different.

### C. Defendant's Base Offense Level Based on Drug Quantity

In support of her third and fourth claims of ineffective assistance, Defendant points to the stipulation contained in the plea agreement regarding the drug quantity attributable to her. She argues the stipulated drug quantity is far below that found in the PSR. According to Defendant: "I plead [sic] guilty to 15 kilos of methamphetamine attributed to me but my PSR said 80 pounds and that is what I was sentenced on. [Trial counsel] did not challenge the fact that my plea agreement stipulates 15 kilos." Doc. 2858 at 6.

As the probation officer set forth in the PSR, 15 kilograms of methamphetamine "correlates to a Base Offense Level of 36." PSR, ¶ 118. Using a base offense level of 36, Defendant would have had a total offense level of 41, resulting in a guideline range of 324 to 405 months. *Id*.

But the probation officer found Defendant accountable for 306,454 kilograms of converted drug weight, resulting in a base offense level of 38. *Id*. Using the probation officer's recommended base offense level of 38, Defendant had a total offense level of 43, resulting in a guideline range of 840 months. *Id*., ¶¶ 116, 118.

Contrary to Defendant's assertion that her plea agreement "stipulates to 15 kilos" the plea agreement instead contains a stipulation that "the defendant's relevant conduct includes *at least* 15 kilograms of a mixture or substance containing a detectable amount of methamphetamine." Doc. 1062 at 7 (emphasis added). The probation officer addressed this in the addendum to the PSR:

> The defendant's plea agreement states that the parties agree that the

8

>    defendant's relevant conduct includes *at least* 15 kilograms of methamphetamine. Because there is no maximum quantity noted, the probation officer believes the base offense level of 38 is within the parameters of the stipulation. Because the objection could possibly affect the guidelines, a ruling by the court may be necessary.

PSR at 36 (emphasis in original).

Ignoring the express language of the plea agreement, trial counsel objected to a drug quantity of more than 15 kilograms. *See* Doc. 1896 at 36 (objecting to ¶ 57). It appears, however, that as Defendant alleges, counsel later withdrew that objection. Defendant states: "[o]n the day of sentencing [trial counsel] said he needed to throw out the objections because it would make the judge mad to have to go through them at sentencing which with my objections my points would have went from 43 to 37 which would have made my guidelines lower to be sentenced off of." Doc. 2858 at 6.

Defendant fails to demonstrate any prejudice resulting from trial counsel "throwing out the objections." Defendant waived her right to appeal the substantive reasonableness of her sentence unless "the sentence [were] above the advisory guideline range determined by the Court to apply to her case[.]" Doc. 1062 at 9, ¶ 10(b). The Court calculated Defendant's guideline range to be 840 months, but sentenced Defendant to 120 months and, therefore, the sentence is subject to Defendant's appellate waiver. *See* Doc. 2608. Significantly, the sentence imposed by the Court was far less than the applicable advisory guideline range even if the Court had calculated the guideline range to be 324 to 405 months (base offense level of 36; total offense level of 41) as urged by Defendant. Thus, any failure by trial counsel to pursue such a claim did not prejudice Defendant.

9

D.     **Advice Regarding Appeal**

As her final claim of ineffective assistance of trial counsel, Defendant states that "[a]fter I got sentenced [my attorney] said that I could not appeal anything." Doc. 2858 at 6. Defendant wholly fails to develop this claim. On this basis alone, her claim is subject to denial.

In response, the Government argues that the statement by Defendant's counsel was "factually accurate" based on the broad appellate waivers in the plea agreement. Resp. at 10. As previously set forth, although Defendant reserved the right to appeal the substantive reasonableness of an above-guidelines sentence, she was sentenced below the guideline range as determined by the Court. Therefore, the Government contends the exception to the appellate waiver did not apply and this factor counsels against any duty by her trial counsel to consult about filing an appeal.

The *Strickland* framework governs a defendant's claim "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Here, Defendant does not claim that she gave her attorney "specific instructions" to either file an appeal or not file an appeal. Instead, she claims her attorney told her she had nothing to appeal. Her claim, therefore, turns on counsel's duty to consult her about an appeal. *Id*. at 478.

In addressing the duty to consult, the court must first ask "whether counsel in fact consulted with the defendant about an appeal." *Id*. In an unpublished decision, the Tenth Circuit has held that "simply stating that a plea agreement would leave 'nothing to appeal' does not inform a defendant of any advantages of taking an appeal, nor does it make an

10

effort to determine the defendant's wishes regarding an appeal, as the Supreme Court requires." *United States v. Kelley*, 318 F. App'x 682, 686 (10th Cir. 2009); *see also United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019) (recognizing that the Supreme Court "has defined 'consult' as 'advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes'" (quoting *Flores-Ortega*, 528 U.S. at 478-80)). The record before the Court demonstrates, therefore, that counsel did not consult with Defendant.

Because Defendant's counsel did not consult with her about an appeal, the Court must next address whether he had a duty to do so. Defendant's counsel had a duty to consult about an appeal if he had "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

As the Court has addressed, Defendant did not give her attorney any specific directions to file an appeal. Defendant otherwise states no facts to suggest she reasonably demonstrated to counsel that she was interested in appealing. To the contrary, she vaguely states that she and her family made numerous unsuccessful attempts to contact her attorney post-sentencing as to questions about her sentencing but she makes no reference to any request to appeal or communications related thereto. She also references communications with counsel about whether to file a post-judgment motion to modify her sentence but again, she fails to allege any facts to support a finding that she demonstrated to counsel that she was interested in appealing.

11

The Court must further address whether counsel had reason to think a rational defendant would want to appeal. Here, Defendant entered a guilty plea – a "'highly relevant factor'" to this analysis. *United States v. DeWald*, 822 F. App'x 768, 774 (10th Cir. 2020) (quoting *Flores-Ortega*, 528 U.S. at 480)). Other factors for the Court to consider include whether the defendant received a bargained-for sentence and whether the defendant waived his or her appellate rights. *Id*. at 775.

In her petition to enter guilty plea, Defendant stated that she understood, that by pleading guilty, she faced a maximum sentence of twenty years as to Count One, ten years as to Count Two and forty years as to Count Three. Doc. 1063 at 4. The plea agreement further sets forth the maximum penalties Defendant faced for each of the counts. Doc. 1062 at 3. The parties further agreed that Defendant should receive a 2-level downward adjustment for acceptance of responsibility, and to the extent the Court found Defendant qualified for the downward adjustment, the Government agreed to move for the additional 1-level downward adjustment. *See* U.S.S.G. § 3E1.1(a)-(b).

In sentencing Defendant, the Court credited Defendant's acceptance of responsibility and, upon motion of the Government, the additional 1-level downward adjustment. Doc. 2608 at 2. Furthermore, the Court granted a variance of Defendant's sentence resulting in a sentence significantly below the advisory guideline range. *Id*. at 3. The record reflects Defendant received the benefit of her plea agreement.

As previously discussed, Defendant waived her appellate rights except for a challenge to the substantive reasonableness of any sentence above-guideline range. Doc. 1062 at 9. This factor, therefore, further supports a finding that counsel had no reason to

think a rational defendant would want to appeal. Her appellate waiver would have precluded a challenge to her sentence.

In sum, balancing the applicable *Flores-Ortega* factors, the Court concludes that under the circumstances of this case, counsel had no duty to consult with Defendant about an appeal and did not provide ineffective assistance in failing to do so. Defendant, therefore, has failed to demonstrate deficient performance under *Strickland*. Defendant, necessarily therefore, has failed to demonstrate "'that there is a reasonable probability that but for counsel's deficient failure to consult with h[er] about an appeal, [s]he would have timely appealed.'" *DeWald*, 822 F. App'x at 775 (quoting *Flores-Ortega*, 528 U.S. at 484)).

### E. Evidentiary Hearing

The Court finds an evidentiary hearing pursuant to § 2255(b) is not warranted. Here, Defendant's allegations, if proved, would not entitle her to relief. *United States v. Weeks*, 653 F.3d 1188, 1200 (10th Cir. 2011).[9] As to her claim regarding any appeal, Defendant makes no allegation that she expressly stated an interest in appealing to her trial counsel and her allegations regarding an appeal are vague at best. *See, e.g., United States v. Harrison*, 375 F. App'x 830, 833-34 (10th Cir. 2010) (Section 2255 does not "strip the district courts of all discretion to exercise their common sense" and a habeas petition is not "automatically entitled to an evidentiary hearing merely because he makes a bald allegation that his attorney refused to file an appeal."); *United States v. Seamster*, No. 22-4003, 2022

---

[9] Defendant has not requested an evidentiary hearing.

WL 2092627 at *4 n. 7 (10th Cir. June 10, 2022) ("[T]he district court did not abuse its discretion in ruling on the § 2255 motion without an evidentiary hearing because Mr. Seamster, by never alleging that he affirmatively asked counsel to file a notice of appeal, did not create a dispute of fact on the matter.").

## V.     Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 2858] is DENIED.  A separate judgment shall be entered.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). To make this showing, Defendant "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *United States v. Manzanares*, 956 F.3d 1220, 1226-27 (10th Cir. 2022) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the present case, the Court concludes that Defendant has not made a substantial showing of the denial of a constitutional right. Therefore, a COA is DENIED and the denial shall be included in the judgment.

IT IS SO ORDERED this 4th day of December, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE